UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROWE ENTERTAINMENT, INC., et al.,

                                   Plaintiffs,           98 Civ. 8272 (RPP)

                                                               **OPINION AND ORDER**

                - against -

THE WILLIAM MORRIS AGENCY, INC., et al.,

                                     Defendants.
------------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

        Currently pending before this Court are three motions for attorneys' fees and costs. Defendants William Morris Agency, Inc. ("WMA"), Creative Artists Agency, LLC ("CAA"), and Renaissance Entertainment, Inc. ("Renaissance") (collectively, the "Booking Agency Defendants") move for an adjudication of Plaintiffs' liability for attorneys' fees, expenses and costs, pursuant to 42 U.S.C. § 1988 and Rule 54(d)(2)(B) and (C) of the Federal Rules of Civil Procedure, and for an adjudication of liability, pursuant to 28 U.S.C. § 1927 and the inherent powers of the court, of Plaintiffs' current and former attorneys of record: Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando, P.L. (the "Gary firm"); Ivie McNeill & Wyatt; Robert E. Donnelly, Esq.; RubinBaum LLP (the "RubinBaum firm"); and Sonnenschein Nath & Rosenthal LLP.  Defendant Beaver Productions, Inc. ("Beaver") moves for attorneys' fees and costs against Plaintiffs and their counsel, the Gary firm, pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, the inherent powers of the court, and Rule 11 of the Federal Rules of Civil Procedure.  Defendant Jam Productions, Ltd. ("Jam") moves for attorneys' fees and costs against

Plaintiffs and their counsel, the Gary firm, pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, and the inherent powers of the court.

For the reasons that follow, the motions for attorneys' fees and costs filed by the Booking Agency Defendants, Beaver and Jam are denied.

## BACKGROUND

The instant motions arise from a civil action, filed on November 19, 1998, by four[1] African-American owned concert promoter companies and their owners:  Rowe Entertainment, Inc. and Leonard Rowe; Sun Song Productions, Inc. and Jesse Boseman; Summit Management Corporation and Fred Jones, Jr.; and Lee King Productions, Inc. and Lee King.  The original Complaint charged eight talent and booking agencies, including WMA, CAA and Renaissance, and twenty-six concert promoters, including Beaver and Jam, with violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and violations of 42 U.S.C. §§ 1981, 1985(3) and 1986.  By Opinion and Order dated May 26, 1999, this Court dismissed the antitrust claims against the Booking Agency Defendants, Beaver, Jam and other former defendants, and dismissed the discrimination claims against Beaver, Jam and other former defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rowe v. William Morris Agency, Inc. ("Rowe I"), No. 98 Civ. 8272, 1999 WL 335139, at *9 (S.D.N.Y. May 26, 1999).

On August 9, 1999, Plaintiffs filed an Amended Complaint alleging an antitrust conspiracy and claims of discrimination against all the original Defendants.  Defendants again moved, pursuant to Rule 12(b)(6), to dismiss the Amended Complaint.  By Opinion and Order dated July 6, 2000, this Court denied the motions to dismiss the Amended Complaint, except the Court dismissed the antitrust claim against Jam and certain other former defendant concert

---

[1] Originally, BAB Productions, Inc. and Bernard Bailey were also named as Plaintiffs, but these Plaintiffs voluntarily discontinued their claims during discovery.  Rowe v. William Morris Agency, Inc. ("Rowe SJ"), No. 98 Civ. 8272, 2005 WL 22833, at *1 n.3 (S.D.N.Y. Jan. 5, 2005).

promoters with prejudice.[2]  Rowe v. William Morris Agency, Inc. ("Rowe II"), No. 98 Civ.

8272, 2000 WL 896929, at *15 (S.D.N.Y. July 6, 2000).

Nearly three years of discovery followed, during which Plaintiffs were afforded virtually

unlimited access to the concert files, computerized e-mail communications and electronic concert

databases of Defendants WMA and CAA.  (See Affidavit of Helen Gavaris, dated Feb. 22, 2005,

¶ 16; Declaration of Jeffrey S. Klein, dated Feb. 22, 2005, ¶ 10.)  More than sixty witnesses were

deposed, including the five Plaintiffs whose depositions took twenty days to complete.  (Booking

Agency Defs.' Br. ("BA Defs.' Br.") at 6.)

On February 28, 2003, the only remaining Defendants, the Booking Agency Defendants,

Beaver and Jam, moved for summary judgment.  On January 4, 2005, this Court filed a 174-page

Opinion granting summary judgment, pursuant to Rule 56 of the Federal Rules of Civil

Procedure, to the Booking Agency Defendants, Beaver and Jam for the failure to present

evidence supporting essential elements of each cause of action asserted in the Amended

Complaint.  Rowe SJ, 2005 WL 22833.

**DISCUSSION**

> **I.     Legal Standards**
>
> > **A.  42 U.S.C. § 1988**

As a general rule in the United States, litigants must pay their own attorneys' fees in the

absence of legislation providing otherwise.  Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421

U.S. 240, 247 (1975).  Congress has provided a limited exception to this rule in 42 U.S.C.

§ 1988, which allows a district court, in its discretion, to grant reasonable attorney's fees to a

---

[2] The Court also dismissed discrimination claims against certain former concert promoter
defendants.  Rowe II, 2000 WL 896929, at *15.

prevailing party in an action to enforce a provision of 42 U.S.C. §§ 1981, 1985 and 1986.[3]  42 U.S.C. § 1988.  Under § 1988, a prevailing plaintiff is "to be awarded attorney's fees in all but special circumstances."  <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 417 (1978).[4]  A prevailing defendant, however, is to be awarded attorney's fees only if a district court finds that the plaintiff's "claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  <u>Id.</u> at 422.  This distinction between prevailing plaintiffs and defendants "advances the congressional purpose to encourage suits by victims of discrimination while deterring frivolous litigation."  <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 762 (1980).

Despite the "prevailing party" language in 42 U.S.C. § 1988, the Supreme Court has identified "two strong equitable considerations" for awarding attorney's fees to a prevailing plaintiff, which are "wholly absent" where the defendant prevails.  <u>Christiansburg</u>, 434 U.S. at 418.  First, "the plaintiff is the chosen instrument to vindicate 'a policy that Congress considered of the highest priority.'"  <u>Id.</u> (quoting <u>Newman v. Piggie Park Enters.</u>, 390 U.S. 400, 402 (1968)).  Second, when a prevailing plaintiff is awarded attorney's fees, these fees are assessed "against a violator of federal law."  <u>Id.</u> at 419.

"The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees" in favor of the defendant.  <u>Hughes</u>, 449 U.S. at 14.  Furthermore, when deciding whether to award attorney's fees to a prevailing defendant, a district court should not "engage in <u>post</u> <u>hoc</u> reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."

---

[3] In pertinent part, 42 U.S.C. § 1988 reads: "In any action or proceeding to enforce a provision of sections 1981, . . . 1985, and 1986 of this title . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988 (b).

[4] <u>Christiansburg</u> involved a fee award in a Title VII case, but the same standards apply to § 1988 fee requests by prevailing parties.  <u>See</u> <u>Hughes v. Rowe</u>, 449 U.S. 5, 14 (1980).

Christiansburg, 434 U.S. at 421-22.  Additionally, this admonition is "particularly pertinent to cases involving allegations of conspiracies" because "[c]onspiracies are by their very nature secretive operations that can hardly ever be proven by direct evidence.  Thus, unsuccessful conspiracy claims are not unreasonable merely because they were based principally, or even entirely, on circumstantial evidence."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 765, 770 (2d Cir. 1998) (internal quotation marks and citations omitted).

**B.  28 U.S.C. § 1927**

Another exception to the "American rule" that litigants must pay their own attorneys' fees is 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 differs from § 1988 in that it imposes liability for misconduct on an attorney or person acting as an attorney.  Also, "it applies a uniform standard for the imposition of sanctions, whether the person against whom fees are assessed represented the plaintiff or the defendant."  Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986).  Section 1927 does not "distinguish between winner and losers."  Roadway Express, 447 U.S. at 762.  Thus, § 1927 does not concern the equities of a dispute, but rather is "concerned only with limiting the abuse of the court processes" by an attorney or person acting as an attorney.  Id.  However, as with § 1988 determinations, the decision whether to impose § 1927 sanctions is within the discretion of the district court.  See McMahon v. Shearson/American Express, Inc., 896 F.2d 17, 23 (2d Cir. 1990); Apex Oil Co. v. Belcher Co., 855 F.2d 1009, 1020 (2d Cir. 1988).

To impose sanctions under § 1927, a court must find "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Agee v. Paramount Communications, Inc., 114 F.3d 395, 398 (2d Cir. 1997); see also MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 73 F.3d 1253, 1262 (2d Cir. 1996) (stating that § 1927 requires a showing of subjective bad faith). "[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri, 803 F.2d at 1273.

### C.  Inherent Powers of the Court

In narrowly defined circumstances, federal courts have inherent power to assess attorneys' fees. Chambers v. Nasco, Inc., 501 U.S. 32, 45 (1991).  A court must exercise "restraint and discretion" when invoking its inherent power." Id. at 44.  A court, in its discretion, may award fees and costs as a sanction against parties and their counsel when they "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Alyeska Pipeline Serv. Co., 421 U.S. at 258-59 (internal quotation marks omitted).  The Second Circuit has set out two different circumstances under which a district court may assess attorney's fees against counsel pursuant to its inherent authority.  First, "[w]hen a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in the actions that led to the lawsuit or conduct of the litigation, which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith." United States v. Seltzer, 227 F.3d 36, 41-42 (2d Cir. 2000) (internal quotation marks and citations omitted).  Second, "when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power." Id. at 42.

## II.    <u>Booking Agency Defendants</u>

### A.   **42 U.S.C. §  1988**

The Booking Agency Defendants claim that, as the prevailing parties on the summary judgment motions decided by this Court on January 4, 2005, they are entitled to recover their attorneys' fees, expenses and costs against Plaintiffs under 42 U.S.C. § 1988 "because Plaintiffs' claims were knowingly false and factually unsupportable at the time they were made."  (BA Defs.' Br. at 1.)  The Booking Agency Defendants present two main arguments to support their motion.  First, they assert that Plaintiffs' claims were frivolous because Plaintiffs "did not present even a shred of evidence to support their fantastic allegations of a massive, industry-wide conspiracy dating back to the 1970's" (<u>id.</u> at 10), and Plaintiffs failed to establish a prima facie case of racial discrimination under § 1981 on any of the varied claims alleged in the Amended Complaint (<u>id.</u> at 11).  This argument is rejected.  The Court did not find that Plaintiffs did not believe that there was race discrimination in the contemporary music concert business, and the evidence did reveal that, in general, black promoters like Plaintiffs were not retained by white artists utilizing the Booking Agency Defendants.  This case foundered on the failure of Plaintiffs' counsel to present adequate evidence from which a jury could reasonably infer that the Defendants' actions were motivated by discriminatory reasons or that a conspiracy to discriminate on the basis of race existed.  <u>See</u> <u>Hughes</u>, 449 U.S. at 14 ("The fact that a plaintiff may ultimately lose his case is not in itself sufficient justification for the assessment of fees."); <u>see also</u> <u>LeBlanc-Sternberg</u>, 143 F.3d at 770 (noting that the aforementioned admonition "is particularly pertinent to cases involving allegations of conspiracies").

Although Plaintiffs failed to present sufficient evidence to withstand summary judgment and the majority of reasons cited by Plaintiffs as proof that their claims were not vexatious,

frivolous or made in bad faith, are not relevant to this inquiry, this Court, after review of the evidence submitted to it on the summary judgment motions, in an exercise of its discretion, does not conclude that Plaintiffs' claims were frivolous, unreasonable or groundless and, in its discretion, will not impose sanctions on the ground that Plaintiffs continued to litigate their claims after they clearly became groundless.[5]

Secondly, in seeking to support their motion for attorneys' fees and costs under 42 U.S.C. § 1988, the Booking Agency Defendants point to five allegations in the Amended Complaint, which they claim were added to cure deficiencies noted by Court in its dismissal of the original Complaint and which they argue were known by Plaintiffs and their counsel to be largely "false and misleading."  (BA Defs.' Br. at 12.)

Although Plaintiffs' counsel has admitted that the allegation in the Amended Complaint that Plaintiffs "accounted for most of the business done by black promoters within the United States" was not accurate, this allegation is not material to whether these Defendants discriminated against Plaintiffs on the basis of their race.[6]  Additionally, this allegation was included in the original Complaint, and, therefore, was not added to cure any deficiencies noted by this Court in its dismissal of the original Complaint in this action.  See Rowe I, 1999 WL

---

[5] Although Plaintiffs did not submit sufficient evidence to support their claims of a conspiracy by the Booking Agency Defendants, Beaver and Jam to discriminate against the Plaintiffs on the basis of their race or to establish a prima facie case of discrimination on any of the alleged claims under § 1981, the instant case is clearly distinguishable from each of the cases cited by the Booking Agency Defendants as support for their motion for attorneys' fees under § 1988.  (BA Defs.' Br. at 9, 16-17 (citing Gerena-Valentin v. Koch, 739 F.2d 755, 761 (2d Cir. 1984); Davidson v. Keenan, 740 F.2d 129, 133 (2d Cir. 1984); Faraci v. Hickey-Freeman Co., 607 F.2d 1025, 1027 (2d Cir. 1979); Carrion v. City of New York, No. 01 Civ. 2255, 2003 WL 22519438 (S.D.N.Y. Nov. 4, 2003); Evans v. Port Auth., No. 00 Civ. 5753, 2003 WL 1992390 (S.D.N.Y. Apr. 29, 2003); Puglisi v. Underhill Park Taxpayer Assoc., 964 F. Supp. 811 (S.D.N.Y. 1997)).)

[6] During the oral argument on these motions for attorneys' fees, counsel for Plaintiffs admitted that this allegation was "not entirely accurate" and should have been "softened" after Al Haymon, a prominent African-American concert promoter, decided not to participate in this action prior to the filing of the original Complaint.  (Tr. of Oral Argument on June 29, 2005, at 51-53.)  Counsel attributed this error to inadvertent oversight, and the Court accepts this explanation.

335139, at *2. Thus, although indicative of inattentive drafting and revising of the original Complaint, this inaccurate statement is not sufficient to cause the Court to conclude Plaintiffs' claims of discrimination were frivolous.

As to the second allegation, that Plaintiffs are "skilled, experienced and financially sound concert promoters" who "are regularly retained by booking agents . . . to promote concerts throughout the United States,"[7] (Am. Complaint ¶ 4), the Court did find that the evidence suggested that Rowe, Boseman and King "did not have the capital, credit record, financial resources or record of successful concert promotion to compete for major acts with established black or white concert promoters" and that the evidence presented to the Court showed only that "Plaintiffs have marginal backgrounds as independent concert promoters." Rowe SJ, 2005 WL 22833, at *30. Although the evidence suggested that this second allegation by Plaintiffs was not accurate, the Court's January 4, 2005 Opinion in Defendants' favor was not based on its evaluation of the truth of this allegation. The Plaintiffs' marginal backgrounds as independent concert promoters did not lead the Court to conclude that Plaintiffs had not presented evidence from which a jury could reasonably infer that Defendants had discriminated against Plaintiffs on the basis of race. Thus, any inaccuracy in this allegation was not found to be material to Plaintiffs' claims.

Next, the evidence presented on the summary judgment motions demonstrated that the third allegation, that "[n]o black promoter, including Plaintiffs, has been able to contract to promote a contemporary music concert given by a white act," was inaccurate. See Rowe SJ, 2005 WL 22833, at *29. However, although this allegation was disproven, the small number of

---

[7] A version of this allegation was also included in the original Complaint, which stated "'[a]t all relevant times, plaintiffs have been, and continue to be, qualified, experienced, and competent concert promoters. . . . Plaintiffs are often contacted and retained by the booking agent defendants to promote concerts to be given by black artists and are well known and respected for their work.'" See Rowe I, 1999 WL 335139, at *2 (quoting the original Complaint).

white acts promoted by black promoters suggests that Plaintiffs and their attorneys, in view of Plaintiffs' limited participation in the concert promoter business, may not have been aware of the promotion of white acts by certain more successful black concert promoters.

As to the fourth allegation, that booking agents select the promoters for concert engagements,[8] this Court found, based on the evidence submitted to it, that the artist has ultimate authority to accept or reject an offer by a concert promoter. See Rowe SJ, 2005 WL 22833, at *8. However, this finding does not preclude discrimination by the Booking Agency Defendants against Plaintiffs. Evidence might have been developed that the booking agents took steps to prevent black promoters from contracting with artists, such as not submitting or misrepresenting the bids by black promoters to artists.

Lastly, the Booking Agency Defendants point to the quid pro quo allegation, which was added to the original Complaint, and upon which this Court relied in determining that the antitrust conspiracy was "sufficiently 'economically plausible' to survive a motion to dismiss." Rowe II, 2000 WL 896929, at *5. Although the evidence submitted by Plaintiffs failed to support their allegation that the Booking Agency Defendants had "quid pro quo" arrangements with the Promoter Defendants, Plaintiffs did submit evidence that showed that some promoters promoted smaller acts in the hopes of getting bigger acts from booking agencies. See Rowe SJ, 2005 WL 22833, at *19. This allegation, however, was support for the economic rationale for the antitrust conspiracy. It was not a "key" allegation for the conspiracy to discriminate against Plaintiffs based on race. Therefore, the allegation is not relevant to Defendants' claims for attorneys' fees under 42 U.S.C. § 1988.

---

[8] Additionally, this allegation was included in the original Complaint. See Rowe I, 1999 WL 335139, at *2.

Thus, although these five allegations were, by the evidence submitted to this Court, shown not to be accurate, these allegations were, by and large, not pertinent to this Court's grant of summary judgment to Defendants on the discrimination claims in the Amended Complaint. Nor are these inaccurate allegations indicative of the merit of Plaintiffs' discrimination claims. The policy behind § 1988 "was to encourage suits by victims of discrimination while deterring frivolous litigation." Roadway Express, 447 U.S. at 762.  This Court, in its discretion and in consideration of the policy behind § 1988, declines to impose sanctions under § 1988 because it does not find the Plaintiffs' claims in the Amended Complaint to be frivolous.

**B.  28 U.S.C. § 1927**

The Booking Agency Defendants argue that the bad faith of Plaintiffs' counsel is demonstrated by their prosecution of a frivolous suit based on bad faith allegations, which were unsupported by evidence, and also point to the various examples of Plaintiffs' counsels' conduct, which they claim vexatiously multiplied the proceedings.  (BA Defs.' Br. at 22.)

As stated above, the Court does not find that the Plaintiffs' claims were frivolous and, thus, sanctions are not warranted under § 1927 for the attorneys' conduct in continuing these claims.[9] See Agee, 114 F.3d at 398.  The five "key" allegations, which were shown to be inaccurate, appear to be due to inattention, lack of care, division of effort by, and change of, counsel, rather than to intentional misbehavior.  Therefore, the Court does not find bad faith by Plaintiffs' counsel, as required to impose sanctions under § 1927.

The Booking Agency Defendants also argue that Plaintiffs' counsel engaged in vexatious behavior that multiplied the proceedings.  (BA Defs.' Br. at 22.)  First, the Booking Agency Defendants argue that Plaintiffs' counsel improperly included Bernard Bailey as a Plaintiff when

---

[9] The Court also finds that the conduct of counsel in pursuing Plaintiffs' antitrust claims was not "so completely without merit as to require the conclusion that [their actions] must have been undertaken for some improper purpose, such as delay."  See Oliveri, 803 F.2d at 1273.

he had been incarcerated and, as a condition of his parole, could not participate in the music industry for almost the entirety of the time period at issue in the Amended Complaint.  (BA Defs.' Br. at 22-23.)  When Mr. Bailey decided to withdraw as Plaintiff, Defendants refused to stipulate to this withdrawal.  Plaintiffs then moved to withdraw Mr. Bailey, and Defendants cross-moved for sanctions and fees, which this Court denied in a memo endorsement dated December 4, 2001.  The Court also ruled in a related memo endorsement that each side was to bear its own costs and attorneys' fees.  (Donnelly Mem. at 5.)  Since the Court has already ruled that each side was to bear its own costs and attorneys' fees, the inclusion of Bernard Bailey as Plaintiff will not be considered in the § 1927 inquiry.

Next, the Booking Agency Defendants cite Plaintiffs' counsel "intentional" violation of Magistrate Judge Francis' January 16, 2002 Order, concerning the use of e-mail data produced by the Booking Agency Defendants.  (BA Defs.' Br. at 23.)  The Court noted this violation in its January 4, 2005 Opinion and disregarded the exhibit that contained information obtained in violation of the order.  Rowe SJ, 2005 WL 22833, at *53 n.143.  Plaintiffs' attorney William Campbell of the Gary firm claims that he "was not aware of and was not informed by the RubinBaum firm that [sic] 2002 Court Order specified any procedure for the utilization of the discovery evidence concerning e-mail data produced by the Booking Agency Defendants."  (See Affidavit of William C. Campbell, dated May 5, 2005, attached as Exhibit 17, Vol. II, to Gary Firm Br., ¶ 6.)  The Court accepts this explanation and does not find this violation of the January 16, 2002 Order of Magistrate Francis to constitute bad faith on the part of counsel, but rather to indicate a failure of new counsel to adequately review the case materials and orders of Court. The exclusion of the exhibit containing such information obtained in violation of the Court's order was sufficient sanction.

The Booking Agency Defendants also note that Plaintiffs' counsel claimed discrimination in connection with acts that were not identified in the Amended Complaint or at Plaintiffs' depositions, which claims were precluded by Magistrate Judge Francis' July 8, 2002 Order. Again, the Court finds that Plaintiffs' inclusion of these claims does not suggest bad faith on the part of Plaintiffs' counsel, but rather inattention.  Defendants were able to respond adequately to these claims.

Lastly, the Booking Agency Defendants point to the improper responses to Booking Agency Defendants' Rule 56.1 Statements and to improper affidavits, which failed to attest to the affiant's personal knowledge, among other faults, submitted by Plaintiffs on the motions for summary judgment.  (BA Defs.' Br. at 23-24.)  On May 23, 2003, the Booking Agency Defendants moved to strike all Plaintiffs' Local Civil Rule 56.1 Statements as not in compliance with the Local Civil Rules, as well as Plaintiffs' affidavits not in compliance with Rule 56(e) of the Federal Rules of Civil Procedure.  See Rowe SJ, 2005 WL 22833, *1 n.1  The Court then issued orders on May 30, 2003, and June 2, 2003, notifying Plaintiffs that their responses were not in compliance with Local Civil Rule 56.1, together with an instructing memorandum, and Plaintiffs amended their Local Civil Rule 56.1 Statements on June 16, 2003.  Id.

Although the Court could have struck the Plaintiffs' Rule 56.1 responses in their entirety, it chose to decide the motions for summary judgment on the merits, rather than have further delay and objections.  In the January 4, 2005 Opinion, this Court struck, for failure to comply with Local Civil Rule 56.1, the portions of the amended Plaintiffs' Rule 56.1 Statements and supporting affidavits that constituted argument and conclusory statements not shown to be made on an affiant's personal knowledge.  The Court also disregarded all statements in the affidavits that did not meet the standard of response required by Rule 56(e) of the Federal Rules of Civil

Procedure and limited the use of certain affidavits to the extent that those affidavits reflected the personal knowledge of the affiants.  See, e.g., Rowe SJ, 2005 WL 22833, at *3 n.10, *15 n.51. The failure of Plaintiffs' counsel to adhere to Local Civil Rule 56.1, despite a direct order of the Court, caused difficulties mainly to the Court.  One sanction for these improperly filed 56.1 statements and affidavits was this Court's striking of the inappropriate portions, and the Court, in its discretion, will not impose further sanctions.

Thus, it is true that some of the behavior noted by the Booking Agency Defendants indicates that Plaintiffs' counsel failed to conduct a proper inquiry of their clients and to conduct an adequate investigation prior to and during the litigation.  Nevertheless, viewing the entire litigation as a whole, Plaintiffs' attorneys' actions were not "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." Oliveri, 803 F.2d at 1273.  Thus, this Court, in its discretion, declines to impose attorneys' fees on Plaintiffs' counsel under § 1927.

### C.  Inherent Powers of the Court

For the aforementioned reasons, this Court, in an exercise of restraint and its discretion, declines to invoke its inherent powers to award attorneys' fees based on the above conduct of Plaintiffs' counsel, including the violation of any court order noted by the Booking Agency Defendants.[10]  See Seltzer, 227 F.3d at 41-42.

### III.   Beaver's Motion for Attorneys' Fees and Costs

Beaver presents four arguments in support of its motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, the inherent powers of the court, and Rule 11 of the Federal Rules of Civil Procedure.  First, Beaver cites to the deposition testimony of Al

---

[10] The Booking Agency Defendants did not move for attorneys' fees and costs against Plaintiffs under the inherent powers of the Court.

Haymon, a prominent African-American promoter, who advised Plaintiffs at the outset that it was a mistake to include promoters in this case.  (Beaver Br. at 3-4.)  Next, Beaver's counsel points to its December 3, 2002 letter to Plaintiffs, which outlined the alleged lack of evidence against Beaver and called upon the Plaintiffs to dismiss their case against Beaver.  (Id. at 5.)  Beaver also contends that Plaintiffs produced no factual or expert evidence against Beaver.  (Id. at 5-6.)  Finally, Beaver argues that Plaintiffs and counsel engaged in "misstatements, half-truths and unfair and unsupported factual and legal arguments."  (Id. at 6; see also Beaver Reply Br. at 3-4.)

### A.  42 U.S.C § 1988

First, Mr. Haymon's beliefs concerning whether Plaintiffs should have brought claims against concert promoters are not evidence that Plaintiffs' claims did or did not have merit. Secondly, neither the December 2002 letter from Beaver's counsel, nor the misstatements included in Plaintiffs' 56.1 Statements, are relevant to whether Plaintiffs had a foundation for initiating their case against Beaver.[11]  The various misstatements and half-truths noted by this Court in its January 4, 2005 Opinion do not indicate whether or not Plaintiffs' claims had merit. As to the lack of factual support for their claims, in this Court's January 4, 2005 Opinion, it found that Plaintiffs had failed to submit sufficient evidence to support their claims.

Although Plaintiffs did not present sufficient evidence to establish a prima facie case of discrimination on any of their claims against Beaver or to support their claim of a conspiracy to discriminate against them on the basis of race, this Court, after reviewing the evidence submitted

---

[11] It is true that upon receipt of the summary judgment motions, Plaintiffs' counsel, rather than citation to the record in discovery as contemplated by Local Rule 56.1 and elucidated by the Court's order, relied on lengthy and conclusory affidavits, principally from Mr. Rowe, to take issue with the deposition evidence and exhibits Defendants used in support of their motions for summary judgment. Rule 56(e) of the Federal Rules of Civil Procedure permits the use of affidavits but requires that they be based on personal knowledge.

on the summary judgment motions and in its discretion, does not conclude that the claims against Beaver were frivolous.  See Hughes, 449 U.S. at 14 (stating that the "fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees" in favor of the defendant).  Rather, there was a failure to present evidence from which a jury could reasonably infer discrimination against Plaintiffs by Beaver.  As in the example of Mud Island, Plaintiffs failed to present evidence from which a jury could reasonably infer that Mayor Herenton's decision to open the Mud Island facility to competitive bidding was caused directly or indirectly by Beaver's letter to the Memphis Park Commission.  Accordingly, no genuine issue of material fact was raised, and the jury would have been asked to speculate.

### B.  28 U.S.C. § 1927

As stated above, the Court does not find that Plaintiffs' claims in the Amended Complaint were without merit, or that Plaintiffs' claims were without merit after Mr. Haymon's deposition and Plaintiffs' receipt of Beaver's 2002 letter.  Thus, sanctions against Plaintiffs' attorneys are not warranted under § 1927 for pursuing these claims.[12]  See Agee, 114 F.3d at 398.  The Court, in its discretion, also declines to award attorneys' fees based on any action taken by Plaintiffs' counsel, such as the misstatements and misleading statements included in the Plaintiffs' Rule 56.1 Statements.  Thus, this Court, in its discretion, declines to impose attorneys' fees on Plaintiffs' counsel under § 1927.

### C.  Inherent Powers of the Court

In an exercise of discretion and restraint, this Court declines to invoke its inherent powers to award attorneys' fees based on the conduct of Plaintiffs' counsel, including the violation of any court order.  See Seltzer, 227 F.3d at 41-42.  The Court did not find that Plaintiffs did not

---

[12] The Court also finds that the conduct of counsel in pursuing Plaintiffs' antitrust claims was not "so completely without merit as to require the conclusion that [their actions] must have been undertaken for some improper purpose, such as delay."  See Oliveri, 803 F.2d at 1273.

believe their complaints of race discrimination, or that these claims were groundless, and it does not find that the individual Plaintiffs intentionally "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Alyeska Pipeline Serv. Co., 421 U.S. at 258-59. Therefore, no award of attorneys' fees under the inherent powers of the court against Plaintiffs is justified.

### D. Rule 11 of the Federal Rules of Civil Procedure

Beaver's motion for attorneys' fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure is untimely and in violation of the twenty-one day "safe harbor" provision included in Rule 11 because this motion was filed when the attorneys sought to be sanctioned lacked the opportunity to withdraw or correct the challenged submission.[13] See Hutchinson v. Pfeil, 208 F.3d 1180, 1183-84 (10th Cir. 2000); Barber v. Miller, 146 F.3d 707, 710-11, (9th Cir. 1998); Ridder v. City of Springfield, 109 F.3d 288, 294-95 (6th Cir. 1997). Although Rule 11 contains no explicit time limit for serving the motion, the "safe harbor" provision provides a practical time limit. In re Pennie & Edmonds LLP, 323 F.3d 86, 89 (2d Cir. 2003). The Advisory Committee on Civil Rules contemplated that: "Given the 'safe harbor' provisions . . . a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." Fed. R. Civ. P. 11 advisory committee's note to 1993 Amendments.

Beaver filed its Rule 11 motion after the entry of summary judgment and, thus, Plaintiffs' counsel was precluded from correcting or withdrawing their allegedly frivolous contentions under the safe harbor provision. Therefore, attorneys' fees pursuant to Rule 11 are unwarranted.

---

[13] The "safe harbor" provision of Rule 11 provides:
A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.
Fed. R. Civ. P. 11(c)(1)(A).

III.    **Jam's Motion for Attorneys' Fees and Costs**

   A.  **42 U.S.C. § 1988**

Defendant Jam argues that it should be awarded attorneys' fees because the discrimination claims against it were groundless from the beginning, and, after oral discovery and exhaustive document discovery, Plaintiffs had no evidence to present against Jam.  (Jam Br. at 11.)  Similar to Beaver, Jam supports its argument that the claims against Jam were frivolous by pointing to the deposition of Mr. Al Haymon, in which Mr. Haymon stated his belief that it was a mistake to include other concert promoters in this lawsuit.  Again, Mr. Haymon's opinion is not evidence that Plaintiffs' claims against Jam did or did not have any merit.

Jam also points to the "misstatements, half-truths and unfair and unsupported factual and legal arguments" submitted by Plaintiffs and their attorneys in this matter.  (Jam Br. at 7-8.)  The various misstatements and half-truths noted by this Court in its January 4, 2005 Opinion do not indicate whether or not Plaintiffs' claims had merit.  As to the lack of factual support for their claims, in this Court's January 4, 2005 Opinion, it found that Plaintiffs had failed to submit sufficient evidence to support their claims.  In view of the purpose of § 1988 and as an exercise of discretion, this Court does not conclude that Plaintiffs' claims against Jam were frivolous or baseless.

Finally, Jam argues that the settlement agreement between Plaintiffs and former Defendant SFX, which contained a clause stating that if Plaintiffs had agreed to settle their claims against Jam for less than one million dollars, Plaintiffs were contractually obligated to pay SFX the difference, shows that the claims were frivolous.  (Jam Br. at 9; see also May 24, 2005 Order.)  Plaintiffs' agreement to this demand of SFX is indicative of SFX's competitive relationship with Jam, but does not bear on the validity of Plaintiffs' claims against Jam.

### B.  28 U.S.C. § 1927

As stated above, the Court does not find that Plaintiffs' claims were meritless and, thus, sanctions against Plaintiffs' counsel are not warranted under § 1927 for pursuing these claims. See Agee, 114 F.3d at 398.  The Court, in its discretion, also declines to award attorneys' fees based on any action taken by Plaintiffs' counsel, such as the misstatements and misleading statements included in the Plaintiffs' Rule 56.1 Statements.  The inclusion of the clause concerning Jam in the settlement agreement between SFX and Plaintiffs was a demand by SFX, which does not support the conclusion that it was undertaken by Plaintiffs' counsel for some improper purpose.  See Oliveri, 803 F.2d at 1273.  Thus, this Court, in its discretion, declines to impose attorneys' fees on Plaintiffs' counsel under § 1927.

### C.  Inherent Powers of the Court

In an exercise of discretion and restraint, this Court declines to invoke its inherent powers to award attorneys' fees based on the conduct of Plaintiffs' counsel, including the violation of any court order.  See Seltzer, 227 F.3d at 41-42.  The Court did not find that Plaintiffs' did not believe their complaints of race discrimination or that these claims were groundless. Accordingly, it does not find that the individual Plaintiffs "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," and therefore, no award of attorneys' fees under the inherent powers of the court against Plaintiffs is justified.  Alyeska Pipeline Serv. Co., 421 U.S. at 258-59.

**CONCLUSION**

Accordingly, the motions for attorneys' fees and costs brought by the Booking Agency

Defendants, Beaver and Jam are denied.

IT IS SO ORDERED.

Dated:  New York, New York
       August ___, 2005

                                       Robert P. Patterson, Jr.
                                            U.S.D.J.

Copies of this Opinion and Order were sent to:

*Counsel for Plaintiffs*:
Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando
221 East Osceola Street
Stuart, FL 34994
By:    Willie E. Gary, Esq.
        Maria Sperando, Esq.
        William Campbell, Esq.
        Laura L. Mall, Esq.
        Ali Gary, Esq.
        Jim Montalvo, Esq.
        Tricia Hoffler, Esq.
Tel:   772-283-8260
Fax:  772-221-2177

Ivie, McNeill & Wyatt
Citigroup Center
444 S. Flower Street, 18th Fl.
Los Angeles, CA 90071
By:    Rickey Ivie, Esq.
        Kendall E. James, Esq.
Tel:   213-489-0028
Fax:  213-489-0552

Robert E. Donnelly
133 West 25th Street
New York, NY 10001
Tel:    212-683-8775
Fax:    212-414-0525

Sonnenschein, Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, NY 11020
By:     Martin Gold
        Raymond J. Heslin
Tel:    212-768-6700
Fax:    212-768-6800


*Counsel for The William Morris Agency, Inc.*:
Loeb & Loeb, LLP
345 Park Avenue
New York, NY 10154
By:     Michael P. Zweig, Esq.
        Helen Garvaris, Esq.
        Charles Miller, Esq.
Tel:    212-407-4000
Fax:    212-407-4990


*Counsel for Creative Artists Agency, LLC*:
Weil Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153
By:     Jeffrey S. Klein, Esq.
        Pierre G. Armand, Esq.
        Andrea Berner, Esq.
        Beverly R. Frank, Esq.
Tel:    212-310-8000
Fax:    212-310-8007


Dewey Ballantine, LLP
1301 Avenue of the Americas
New York, NY 10019
By:     Jeffrey L. Kessler, Esq.
Tel:    212-259-8050
Fax:    212-259-6333

*Counsel for Renaissance Entertainment, Inc.*:
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10110
By:     Steve M. Hayes, Esq.
        Gregory A. Clarick, Esq.
        Orin Snyder, Esq.
Tel:    212-790-4500
Fax:    212-790-4545


*Counsel for Beaver Productions, Inc.*:
Emmett, Cobb, Waits & Kessenich
1515 Poydras Street, Suite 1950
New Orleans, LA 70112
By:     James A. Cobb, Jr., Esq.
        Matthew F. Popp
Tel:    504-581-1301
Fax:    504-581-6020


*Counsel for Jam Productions, Ltd.*:
Piper Rudnick
203 North LaSalle Street, Suite 1400
Chicago, IL 60601
By:     James D. Roberts, Esq.
        Peter M. Ellis, Esq.
        George L. Grumley, Esq.
Tel:    312-368-4000
Fax:    312-236-7516